UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| NIGEL MARLIN REID, SR., | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | NO: 2:14-CV-334 |
| | ) | |
| TERESA WEST, ROGER OVERHOLT, | ) | |
| CHRISTIAN NEWMAN, AL | ) | |
| HERRERA, VICKI ARNOLD, | ) | |
| STANCIL FORD, DANNY THOMAS, | ) | |
| KAY SENTER, GARY CHESNEY, | ) | |
| PAUL LEBEL, DENNIS ALVIS, | ) | |
| CHRIS BIVENS, BOB GERET, BILL | ) | |
| BRITTEN, ESCO JARRAGIN, | ) | |
| HAMBLEN COUNTY SHERIFF | ) | |
| DEP'T, MORRISTOWN POLICE | ) | |
| DEPARTMENT, HAMBLEN, | ) | |
| COUNTY, TENNESSEE, CITY OF | ) | |
| MORRISTOWN, TENNESSEE, | ) | |
| ANTHONY COX, HAMBLEN | ) | |
| COUNTY GOVERNMENT, CITY OF | ) | |
| MORRISTOWN GOVERNMENT, JASON | ) | |
| PHIPPS, JENNIFER GENTRY, and CRAIG | ) | |
| PRICE, | ) | |
| *Defendants*. | ) | |

MEMORANDUM AND ORDER

This *pro se* complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 was filed by Nigel Marlin Reid, Sr. ("plaintiff" or "Reid") while he was confined in the Hamblen County Jail, [Doc. 1]. Plaintiff has also submitted an application to proceed *in forma pauperis*, [Doc. 2]. On November 18, 2004, the Court ordered Reid to file a certified copy of his inmate trust account for the previous six month period pursuant to 28 U.S.C. § 1915(a)(2) within 30 days.

1

The order clearly notified plaintiff that if he failed to comply with the order within the time required the Court would presume that he is not a pauper, assess the full amount of fees, and order the case dismissed for want of prosecution, [Doc. 4]. Reid has not complied with the order. Plaintiff's motion for leave to proceed *in form pauperis*, [Doc. 2], is therefore DENIED and plaintiff is assessed the full civil filing fee of $350.00. Despite the warning contained in the order that the case would be dismissed for want of prosecution if the order was not complied with, the Court declines to dismiss the action on that basis in light of Reid's continued filings in the case.

**I.        Screening Pursuant to 28 U.S.C. §§ 1915A and 1915(e)**

Under the Prison Litigation Reform Act ("PLRA"), Pub. L. 104-134, 110 Stat. 1321, codified in 20 U.S.C. § 1915, district courts must screen prisoner complaints, including those filed while the plaintiff is incarcerated, and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that fail to state a claim from which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id*. at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A). In screening complaints, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to

2

Case 2:14-cv-00334-JRG   Document 19   Filed 01/21/15   Page 2 of 19   PageID #: 60

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court examines the complaint in light of those requirements.

## II. The Complaint's Allegations

Although plaintiff's handwritten complaint is both difficult to read and to understand, it appears that his claims arise largely out of two incidents—one on July 10, 2014, the second on October 13, 2014.

On July 10, officers responded to the Lincoln Manor Apartments in Morristown, Tennessee, after receiving a 911 emergency call from a young woman at that address. According to the caller, a young man at her apartment door delivered a message from the plaintiff, her ex-boyfriend, threatening to kill any man who became involved with the victim and the victim herself if she went to the police. The plaintiff and two other young men were located by police a few blocks from the victim's residence.

Witnesses from the apartment complex had seen plaintiff at the victim's property. The two young men admitted in a signed statement that they delivered the message from plaintiff, which described the sender as "Nigel, the Godfather and the Cherokee Blackfoot Mafia." The victim reported to police that she was in fear for her safety from plaintiff. Witnesses also reported seeing plaintiff on the premises on several occasions and a formal complaint had been made by the victim to the Morristown Police Department nine days earlier that Reid had been harassing and threatening her. An affidavit of complaint, [Doc. 1-2 at 7], signed by Detective Sergeant Herrera of the Morristown Police Department on July 16 charged Reid with stalking in violation of Tennessee Code Annotated § 39-17-315 and an arrest warrant was issued by a judicial commissioner. Reid pled guilty to an amended charge of harassment in violation of

Tennessee Code Annotated § 39-17-303 on September 12, 2014, [Doc. 1-2 at 8], and was sentenced to 11 months, 29 days, suspended to time served with a balance on probation. He was ordered to complete a domestic violence counseling program as a condition of probation.

On October 13, 2014, Reid went to the lobby of the Talley-Ward Recreation Center operated by Morristown Parks and Recreation where he was verbally abusive to staff member, Jason Phipps. Phipps wrote an incident report describing the incident, [Doc. 1-2 at 2-3]. Reid came into the lobby announcing that he had won a lawsuit against the Morristown Utility System but Phipps told Reid he could not talk to him, apparently because of another lawsuit of Reid's against the City of Morristown. Phipps closed the door to his office and Reid "aggressively reopened it," *id.*, causing a dry erase board to fall off the wall. Reid loudly announced to Phipps that he would be losing his job.

Reid left the building, but subsequently reentered and asked for a basketball. Reid was told that "free play time," had ended and Reid stated he would return the next day. Reid was apparently questioning staff and attempting to "bully" staff, while one teenager was present. On the next day, Craig Price, Parks and Recreation Director, recommended that Reid be suspended for one year from Parks and Recreation facilities.[1] On the same day, Reid was notified by letter from Jennifer Gentry, Recreation Program Coordinator, that he was permanently suspended from the City of Morristown Parks and Recreation facilities and parks, [Doc. 1-2 at 5]. Gentry's letter was copied to Tony Cox, City Administrator, Craig Price, Director, Parks and Recreation, Frankie Cox, Recreation Superintendent, and Phipps.

On October 15, Lieutenant Vicki Arnold, Morristown Police Department, swore to an affidavit of complaint, [Doc. 1-2 at 4], charging Reid with disorderly conduct and an arrest

---

[1] Reid was apparently already on probation for harassing Parks and Recreation Department staff.

warrant was issued. Reid was arrested and apparently released on bond. At the time, it appears Reid was also on bond for charges of aggravated assault and disorderly conduct pending in the Criminal Court for Hamblen County. On October 21, Circuit Court Judge Alex Pearson increased Reid's bond to $50,000 in that case, noting that Reid's bond had previously been revoked and then reinstated, because of the new charges stemming from the October 13 incident, [Doc. 1-2 at 6]. On October 27, 2014, Reid pled guilty to the disorderly conduct charge resulting from the October 13 incident.

Although, as noted above, Reid's complaint is very difficult to understand, it appears that Reid claims he was falsely arrested on both the July 16 and October 15 warrants, and subsequently falsely imprisoned. Reid also claims that he has been harassed and slandered and that he has been unconstitutionally retaliated against by the Morristown Police Department, who arrested him because he ran for mayor or other public office. He appears to assert a claim that he was wrongfully suspended permanently from Morristown Parks and Recreation facilities and parks. Finally, he claims unconstitutional conditions of confinement at the Hamblen County Jail, including overcrowding.

### III. Analysis

#### A. Suable Defendants

At the outset, plaintiff has named two defendants that are not suable entities under § 1983. Neither the Hamblen County Sheriff's Department nor the Morristown Police Department are "persons" who can be sued under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 688-90 (1978), *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (a police department is not an entity which can be sued under § 1983), *Smith v. Ritter*, 2013 WL 3753984 (E.D. Tenn., July 15, 2013) (Collier, J.), *Ambrose v. Knight*, 2013 WL 3430840 (E.D.

Tenn. July 8, 2013) (Mattice, J.), *Banner v. Hamblen County Sheriff's Department*, 2012 WL 1565385 (E.D. Tenn. April 30, 2012 (Jordan, J.); *Johnson v. Anderson*, 2008 WL 4093352 (E.D. Tenn. August 28, 2008) (Greer, J.); *Vega v. Harville*, 2008 WL 1840742 (E.D. Tenn. April 23, 2008) (Varlan, J.); *Maroney v. Ward*, 2008 WL 589532 (E.D. Tenn. February 22, 2008) (Phillips, J.).

Thus, any allegations asserted against these two defendants fail to state a claim and plaintiff's complaint against the Hamblen County Sheriff's Department and the Morristown Police Department are DISMISSED.

**B.    Hamblen County Government/City of Morristown Government**

Plaintiff names both Hamblen County and Hamblen County Government, as well as the City of Morristown and City of Morristown Government, as defendants in this case. These are not separate entities and Hamblen County Government and City of Morristown Government are DISMISSED and stricken from the complaint.

**C.    Vicki Arnold, Anthony Cox, Christian Newman, Roger Overholt, and Craig Price**

On October 15, 2014, Lt. Vicki Arnold signed an affidavit of complaint charging plaintiff with disorderly conduct. The affidavit alleged that Reid went to the Talley-Ward Center at approximately 5:30 p.m. on October 13, 2014, where he attempted to start a conversation with Jason Phipps, an employee of the City of Morristown Parks and Recreation Department. Phipps, due to the aggressive nature of Reid's actions, went into his office and closed the door to avoid confrontation with Reid. Plaintiff then forcibly pushed the office door open causing a dry erase board on the wall to fall to the floor and began screaming in a loud voice that he would have Phipps fired. Reid pled guilty on October 27, 2014, because he "couldn't prove" his innocence. He now claims that he can prove his innocence and he asserts that he was falsely arrested and

6

imprisoned by Arnold and that Cox, Overholt, Newman and Price knew "that Vicki Arnold had not [sic] real resion [sic] to arrest [him]." He also asserts claims for harassment and slander.

As an initial matter, plaintiff's claims for harassment and slander fail because they do not involve the violation of rights secured by the Constitution and the laws of the United States. *See Paul v. Davis*, 424 U.S. 693 (1976) (defamation claim not cognizable under § 1983); *Collier v. Austin Peay State University*, 616 F. Supp. 2d 760, 775 (M.D. Tenn. 2009). And, while Reid's claims of false arrest and false imprisonment might theoretically state a § 1983 claim, that claim fails as a matter of law as well. To prevail on a false arrest/false imprisonment claim[2] under the Fourth Amendment, a plaintiff must show that he was arrested without probable cause and detained without legal process. *Wallace v. Kato*, 549 U.S. 384, 390 (2007). Since the claims turn on probable cause, a plaintiff must allege and prove a lack of probable cause in order to prevail on his Fourth Amendment claims. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983. *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979); *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).[3] In addition, it is well established that a guilty plea bars a § 1983 plaintiff from relitigating the issue of whether there was probable cause to arrest and detain him. *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) ("Plaintiffs are estopped by their [guilty] pleas in state court from now challenging the reasonableness of their arrest in the instant Section

---

[2] False arrest and false imprisonment claims are functionally the same and the Court applies the same analysis to both claims. *See Gumble v. Waterford Township*, 171 Fed. App'x 502, 507 (6th Cir. 2006).

[3] A facially valid warrant is not always sufficient to merit dismissal of a false arrest/false imprisonment claim brought pursuant to § 1983 when evidence exists that a defendant intentionally misled or intentionally omitted information at a probable cause hearing for an arrest or search warrant provided that the misleading or omitted information is critical to the finding of probable cause. *See Mays v. City of Deyton*, 134 F.3d 809, 816 (6th Cir. 1998); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). In this case, however, plaintiff never alleges, much less offers evidence, that any of the defendants intentionally misled the judicial commissioner or that they omitted material information at the probable cause hearing.

7

1983 action.").

Reid does not plead that his arrest was without probable cause. Nor does he challenge the facial validity of the warrant. Most importantly, however, Reid is now barred by his guilty plea, which he admits he entered, from bringing his Fourth Amendment false arrest/false imprisonment claim for lack of probable cause, his current claim of innocence notwithstanding. In other words, plaintiff's guilty plea conclusively establishes that probable cause for his arrest existed. Furthermore, nothing in this record suggests that this conviction has been reversed, expunged or declared invalid. Under the *Heck* doctrine, derived from *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), a claim alleging an unconstitutional conviction or imprisonment under § 1983 is not cognizable unless the plaintiff can prove that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a (habeas corpus)." *Id*. at 487. Since a ruling in plaintiff's favor here "would necessarily imply the validity of his conviction or sentence," his complaint for false arrest/imprisonment must be dismissed. *Id*. In addition, the Sixth Circuit has also recognized that a guilty plea has a *res judicata* effect for plaintiffs seeking damages under these circumstances. *Martin v. Girard*, 215 F.3d 1327, 2000 WL 658321 (6th Cir. 2000) (unpublished opinion).

Plaintiff's claims against Cox, Overholt, Newman and Price also fail to state a claim. Plaintiff's only allegation against these defendants is that they "knew" that Arnold had no reason to arrest him. Given that Reid's false arrest/false imprisonment claims are not cognizable under § 1983, he fails to state a claim for relief against these defendants as well.

**D. Al Herrera**

On July 16, 2014, Morristown Police Department Detective Sergeant Al Herrera signed a sworn affidavit of complaint in the General Sessions Court for Hamblen County charging Reid with stalking in violation of Tennessee Code Annotated § 39-17-315. The affidavit alleged that officers responded to Lincoln Manor Apartments in Morristown on July 10, 2014, and were told by the victim that a young man had appeared at her apartment door to deliver a threatening message from the plaintiff, her ex-boyfriend. The young man signed a statement that he delivered the message on behalf of Reid. The message stated that "any man that becomes involved with the victim will be killed and if she (the victim) goes to the police she will be killed also." The message was on behalf of "Nigel, the Godfather and the Cherokee Blackfoot Mafia." The victim had filed a complaint with the Morristown Police Department about ten days earlier claiming that Reid had been harassing her by phone and threatening to kill her. A warrant for plaintiff's arrest was issued on July 16, 2014. Reid appeared before the General Sessions Court on September 12, 2014, waived his right to counsel, and pled guilty to harassment, a Class A misdemeanor, in violation of Tennessee Code Annotated § 39-13-308. Plaintiff was sentenced to 11 months, 29 days, and released on probation.

Plaintiff claims he "can and will prove that on July 14-14 Al Herrera did arrest me falsely." He claims that the victim has told him she wanted to drop the charges but that Herrera told her that if she did Reid could sue her and Herrera for false arrest. Reid's false arrest claim against Herrera fails for the same reasons as his claim against Arnold fails as set forth above. Furthermore, it makes no difference that Reid pled guilty to an offense other than the one with which he was originally charged. *See, e.g., Walker v. Clearfield County District Attorney*, 413 Fed. App'x 481, 483 (3d Cir. 2011) ("[A] guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause."). Even if *Heck* did not bar plaintiff's false

arrest/false imprisonment claim, his guilty plea on the harassment charge establishes that probable cause existed for that offense at the time of his arrest. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."). "A plaintiff suing for false arrest under Section 1983 'must show that the police lacked probable cause to arrest him for *any unlawful conduct*." *Bellamy v. Hanley*, 2014 WL 524077, at * 3 (E.D. N.Y. 2014) (quoting *Sealey v. Fishkin*, No. 96-CV-6303, 1998 WL 1021470, at * 4 (E.D. N.Y. Dec. 2, 1988) (emphasis in original).

    **E.**    **Teresa West**

Terssa West is apparently the Clerk and Master of the Hamblen County Chancery Court. Plaintiff alleges that West "did go get an out-of-town Judge Alex> to rase [sic] my 1,000.ᵒᵒ one thousand Dollar Bond to 50,000ᵒᵒ Fifty thousand Dollars on a C misdeanor [sic]." Attached to Reid's complaint is an order entered on October 21, 2014, in Hamblen County Criminal Court Case No. 14-CR-471 in which Reid was apparently charged with aggravated assault and disorderly conduct. The order, signed by Judge Alex Pearson, recites that Reid is currently on bond in the case and notes that bond had previously been revoked and later reinstated. In the order, the Court finds that Reid's bond should be increased to $50,000 in No. 14-CR-471 due to a new charge of disorderly conduct on October 13, 2014, in General Sessions Court Case No. 166069. [Doc. 1-2 at 6].

Although *pro se* plaintiffs' pleadings are held to a more liberal standard, plaintiff's complaint contains absolutely no factual allegations which would give rise to a "plausible claim for relief," against West. More specifically, there is simply no allegation that plaintiff was deprived of any rights secured by the Constitution of the United States and the Court is not required to conjure up unpleaded facts to save a complaint from dismissal. *Bell*

10

*Atlantic Corp.*, 127 S. Ct. at 1969. The burden of pleading facts that, if true, will support a constitutional violation lies with the plaintiff. He falls woefully short of that requirement on this claim.

### F. Jason Phipps, Craig Price, Anthony Cox and Jennifer Gentry

Jason Phipps, a Morristown Parks and Recreation employee and Talley-Ward Center Supervisor, wrote an incident report documenting his interaction with plaintiff on October 13, 2014, at the Talley-Ward Center. Phipps's report alleges that a teenager was present at the center during the incident. Reid alleges that Phipps "never recived [sic] the permishion [sic] from the 14-15 year old child [ ] parents or gardeants [sic]" and that Phipps only requested that Reid be suspended from Parks and Recreation facilities and Parks for one year but on October 14, 2014, he was suspended for life, something approved by Craig Price and Anthony Cox. Reid attached to his complaint a "Notice of Suspension" dated October 14, 2014, signed by Jennifer Gentry, Recreation Program Coordinator, which notified plaintiff that his actions on October 13 violated a previously imposed one-year probationary period and permanently suspended Reid from Parks and Recreation facilities and parks, [Doc. 1-2 at 5]. Gentry's letter was copied to Tony Cox, Morristown City Administrator, Craig Price, Director Parks and Recreation, Frankie Cox, Recreation Superintendent, and Phipps.

It is difficult for the Court to discern the exact nature of plaintiff's claims against these defendants. Once again, however, he falls woefully short of pleading sufficient facts to state a plausible claim for relief. There is simply no allegation that can even remotely be construed as an allegation that plaintiff was deprived of any right secured by the Constitution. That the Parks and Recreation Department has the right to suspend the privileges of a patron who violates his probation (because of prior misconduct) and engages in threatening and abusive

conduct toward its employee is largely beyond question. Reid fails to state a claim against Phipps, Price, Cox and Gentry and the complaint against these individual defendants will be DISMISSED.

### G. City of Morristown, Danny Thomas, Kay Senter, Gary Chesney, Paul Lebel, Dennis Alvis, Chris Bivens, and Bob Garet

Plaintiff alleges that officers of the Morristown Police Department "always"/ "mostly" would lock him up when he or his children run for mayor or other public office. He claims the individual defendants are aware of this. Apparently, Reid announced his candidacy for mayor about three weeks prior to the filing of the complaint. While the right to hold a particular political office is not a constitutionally protected property or liberty interest, *Snowden v. Hughes*, 321 U.S. 1, 6-7 (1944), the right to fairly run for political office without being discriminated against based upon political beliefs or associations is protected by the First Amendment and the equal protection clause of the Fourteenth Amendment. *See Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). "It has long been clearly established that the First Amendment bars retaliation for protected speech and [political] association." *MIMICS, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005).

So while it is possible that plaintiff could state a claim for relief under § 1983 for retaliation based on his political candidacy or political associations, he has not done so here. To prevail on a claim against the City of Morristown, a governmental entity, he must establish that a policy, custom, or practice of the municipality has resulted in a deprivation of his constitutionally protected rights. *Monell*, 341 U.S. at 690-91. Plaintiff does not allege that Morristown has any official custom or policy that has resulted in a violation of the rights conferred upon him by the Constitution. He does nothing more than make a conclusory allegation that Morristown Police Department officers always/mostly lock him up every time he runs for mayor or other public

office.  Such a conclusory allegation fails to state a claim for relief under § 1983.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1997).

Plaintiff pleads no facts which would give rise to a plausible claim for relief.  His only factual allegations are that he was arrested and charged with stalking after the January 14 incident and that he was arrested and charged with disorderly conduct as a result of the October 13 incident.  In both cases, however, he pled guilty.  Nothing alleged in the complaint suggests that these arrests were in any way in retaliation for his candidacy for mayor or other public office or in retaliation for protected speech or association.  Furthermore, there is no *respondeat superior* liability in a § 1983 case.  "[A] municipality cannot be held liable solely because it employees a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a Respondeat Superior theory."  *Jones v. City of Memphis*, 586 F.2d 622, 624 (6th Cir. 1978) (quoting *Monell*, 436 U.S. at 691).

To prevail on his claim that he was singled out for prosecution in retaliation for his candidacy, Reid would be required to show that the "action taken . . . was a spiteful effort to 'get' him for reasons **wholly** unrelated to any state legitimate objective."  *Olech v. Village of Willowbrook*, 160 F.3d 386, 387 (7th Cir. 1998) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)); *see also Cleveland Const. Inc. v. Occupational Safety & Health Review Comm.*, 201 F.3d 440 (6th Cir. 1999).  Plaintiff must offer proof that he was singled out based on a totally "illegitimate animus toward the plaintiff by the defendant."  *Olech*, 160 F.3d at 388.  Nothing here suggests that; indeed, just the opposite is true.  Reid was arrested not because of his political candidacy, his political views or his political associations, but because he had committed a criminal offense.  Plaintiff fails to state a claim for relief against the City of Morristown.

Likewise, plaintiff fails to state a claim against any of the individual defendants.

13

His sole factual claim against any of these defendants is that they were aware of the actions of the Morristown Police Department. Plaintiff does not identify these defendants as employees of the Morristown Police Department or the City of Morristown, although the Court will assume that they are. However, when city officials are sued for alleged violation of federal constitutional rights, to be liable in their individual capacities,[4] they must "personally participate in the event" causing the violation. *Spencer v. Landrith*, 315 Fed. App'x 62, 2009 WL 468291, at * 2 (10th Cir. 2009); *Bettis v. Bickel*, 08-7079, 2009 WL 214728, at * 2 (10th Cir. 2009) (holding that "'[a] supervisor can . . . be held liable if the supervisor expressly authorized, supervised, or participated in conduct which caused the constitutional deprivation.'") (quoting *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007)).

Further, "[t]he theory of negligent supervision cannot provide a basis for liability under § 1983." *Spencer*, 2009 WL 468291 at * 2 (citing *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007)); s*ee also Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.") (citing *Murphy v. Grenier*, 406 Fed. App'x 972, 974 (6th Cir. 2011) (unpublished opinion) ("Personal involvement is necessary to establish § 1983 liability.")). Moreover, "there is no concept of supervisor strict liability under § 1983." *Wilson v. Seiter*, 893 F.2d 1336, (Table), 1990 WL 1125 at * 3 (6th Cir. 1990) (citing *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984). *See also Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Id*. Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Id*. at 994-95 (quotations and

---

[4] Suits against municipal officers acting in their official capacities are treated the same as those against the municipality.

citations omitted).

**H.     Hamblen County, Bill Britten, Esco Jarrigan [sic]**

Esco Jarrigan and Bill Britten are, presumably, officials of Hamblen County. As such, claims against them in their official capacities are claims against Hamblen County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). According to plaintiff's complaint, the Hamblen County Jail is overcrowded. When he entered the "Annex" in October, 2014, there were 24 bunks for 71 inmates and plaintiff was required to sleep on the floor. Plaintiff alleges that he had to defend himself, and that he tripped on a mat on the floor twice. He claims that Hamblen County is responsible for building a new jail.[5] Plaintiff alleges that defendants Britten and Jarrigan "both know" that the jail is overcrowded.

As an initial matter, to the extent plaintiff sues Britten and Jarrigan in their individual capacities, he does not state a claim against them for the reasons set forth in the preceding section. As noted above, to prevail on a claim against either defendant Hamblen County or defendants Britten or Jarrigan in their official capacities, plaintiff must establish that a policy, custom, or practice of Hamblen County has resulted in the deprivation of his constitutionally protected rights. *Graham*, 473 U.S. at 690-91. Because plaintiff has not alleged the denial of any constitutional right which resulted from a policy, custom, or practice of the county, plaintiff has failed to state a claim against these defendants.

Even if plaintiff had alleged that it was Hamblen County policy to force inmates to sleep on the floor, he would not state a claim for relief. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In the context of a conditions-of-

---

[5]     The Court notes that plaintiff does not seek such relief; rather, he seeks money damages in the amount of $350,000,000 "punitive" damages against Hamblen County.

confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992). Prison overcrowding, in and of itself, is not necessarily unconstitutional. *Owens v. Campbell*, 198 F.3d 246, 1999 WL 1023690, * 1 (6th Cir. Nov. 5, 1999) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)); *Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996).

If overcrowded conditions, however, cause an inmate to be denied the minimal civilized measure of life's basic needs, such as food, warmth, or exercise, this would transgress the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298, 304 (1991). But, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. The conditions described by plaintiff do not constitute extreme deprivations which could be characterized as punishment prohibited by the Eighth Amendment. For instance, a prisoner has no right to sleep on an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); *see also Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) (forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation); *Grissom v. Davis*, 55 Fed. App'x 756, 758, 2003 WL 343248, * 2 (6th Cir. Feb. 12, 2003) (seven-day deprivation of a mattress and bedding did not violate the Eighth Amendment); *Jones v. Toombs*, 77 F.3d 482 (Table), 1996 WL 67750, at * 1 (6th Cir. Feb. 15, 1996) (two-week deprivation of a mattress is not a constitutional violation).

Nonetheless, forcing an inmate to sleep on the floor, in some cases, might qualify as an extreme privation. *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008) (forcing inmates to sleep on a wet and moldy mattress on the floor for 59 days sufficiently serious deprivation); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (requiring inmate to sleep in a cold cell on a rat-infested floor states a colorable constitutional claim). That being said, there has been no

constitutional violation unless the challenged jail conditions have resulted in "the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304. No such circumstances have been alleged in this case.

Plaintiff also contends that he was required to "defend my self." Presumably, there was another inmate involved but plaintiff provides no factual development disclosing the nature of the confrontation, the identity of the other inmate or inmates involved, where and when the encounter occurred, or any other circumstances surrounding the incident. Thus, because this allegation has no factual underpinnings, it is conclusory. This conclusory allegation fails to state a claim for relief under § 1983. The Eighth Amendment does, however, prohibit the infliction of cruel and unusual punishment and obliges prison officials to protect inmates from violence at the hand of other inmates. An Eighth Amendment violation occurs where a prisoner is exposed to a substantial risk of serious harm due to the deliberate indifference of those officials. *Farmer v. Brennen*, 511 U.S. 825, 828-29 (1994). To establish deliberate indifference, plaintiff must show that defendant was aware of facts from which he could infer that such a risk existed <u>and</u> that he actually drew that inference. *Id*. at 837. Plaintiff makes no such allegations in this complaint. Furthermore, he alleges absolutely no injury from being required to "defend" himself.

Lastly, plaintiff asks the Court to grant him monetary damages, but he does not allege, and it does not appear, that he sustained any physical injury as a result of the purported conditions. Under the PLRA, a prisoner may not bring a claim for emotional or mental damages absent a showing of prior physical injury. *See* 42 U.S.C. § 1997e(e). This provision applies to Eighth Amendment claims, such as plaintiff has asserted here. *See Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997). Here, plaintiff has not claimed he suffered any physical injury as a

17

Case 2:14-cv-00334-JRG   Document 19   Filed 01/21/15   Page 17 of 19   PageID #: 75

result of conditions in the jail, and, thus, § 1997e(e) does not permit him to bring these claims for damages.

### I.     Stancil Ford

Almost as an afterthought, plaintiff seeks to add to his statement of claims a claim against Stancil Ford. He does not identify who Stancil Ford is nor does he identify his position, presumably with the City of Morristown or Hamblen County. He simply alleges that at some unstated time "Stancil Ford did as or [sic] have the MUS to Blue screen my speach [sic] when I campaign [sic] for my son Nigel Marlin Reid, II for Hamblen County mayor on or about June 15-14." Plaintiff claims that he can prove that Ford ran over his (Ford's) wife's legs with his car and that his nephew stole about $75,000 from the Hamblen County Landfill.[6] The Court must confess that it does not understand what Ford is accused of doing. In any event, plaintiff has not stated sufficient facts to plausibly make a claim of deprivation of constitutional rights and this claim fails for that reason alone.

### J.     State Law Claims

Although it is not clearly stated in the complaint, plaintiff also appears to assert claims under Tennessee state law and/or the Tennessee Constitution. To the extent he makes such claims, those claims should be handled by the state courts. The Sixth Circuit "has adopted the position that the district courts have minimal discretion to decide pendent state law claims on the merits once the basis for federal jurisdiction is dismissed before trial." *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986) (citations omitted); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (A) if [ ] the district court has dismissed all claims over which it has original

---

[6] It can be inferred from plaintiff's complaint that Ford was chairman of the landfill or its governing board.

18

Case 2:14-cv-00334-JRG   Document 19   Filed 01/21/15   Page 18 of 19   PageID #: 76

jurisdiction."). This Court is not of the opinion that "overwhelming interests of judicial economy" provide cause in this case for the Court to retain jurisdiction over the plaintiff's pendent claims that the Court has not otherwise addressed above. *See Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2003) ("The usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of . . .") (citations omitted). Accordingly, to the extent plaintiff attempts to assert any state law causes of action herein, those claims will be dismissed without prejudice, subject to any rights he may have to re-assert those in state court.

## IV. Conclusion

In light of the above law and analysis, the complaint has not stated any viable constitutional claims and plaintiff's complaint will be DISMISSED. A separate judgment will enter dismissing plaintiff's federal constitutional claims WITH PREJUDICE and his state law claims WITHOUT PREJUDICE.

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
